

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF THE GENERAL COUNSEL

### MEMORANDUM TO BETSY DeVOS
### SECRETARY OF EDUCATION

*Re: Student Loan Principal Balance Cancellation,*
*Compromise, Discharge, and Forgiveness Authority*

You have asked the Office of the General Counsel to memorialize our opinion concerning the Secretary's statutory authority to cancel, compromise, discharge, or forgive, on a blanket or mass basis, principal balances of student loans made pursuant to Title 20, Chapter 28, Subchapter IV of the United States Code ("Title IV" or "HEA"), and/or to materially modify the repayment amounts or terms thereof ,whether due to the declared National Emergency caused by the COVID-19 pandemic, *see Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak*, 85 Fed. Reg. 15337 (March 18, 2020), or otherwise.

Since March 2020, the Department has effectuated appropriate waivers of and modifications to the requirements and conditions of economic hardship deferments described in § 455(f)(2)(D) of the HEA, as codified at 20 U.S.C. § 1087e(f)(2)(D), and the HEROES Act, as codified at 20 U.S.C. § 1098bb(a)(2), and provided such deferments to borrowers as necessary to continue the temporary cessation of payments and the waiver of all interest on student loans held by the Department until January 31, 2020. *See, e.g.*, U.S. Dep't of Educ., Office of Federal Student Aid, Coronavirus and Forbearance Information for Students, Borrowers, and Parents; § 3513 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136 (March 27, 2020); Mem. for the Sec'y of Educ. regarding Continued Student Loan Payment Relief During the COVID-19 Pandemic, 85 Fed. Reg. 49,585 (Aug. 13, 2020); U.S. Dep't of Educ., Off. of Postsecondary Educ., Updated Waivers and Modifications of Statutory and Regulatory Provisions, 85 Fed. Reg. 79,856 (Dec. 11, 2020). At that time, the Secretary also considered her authority to provide blanket or mass cancellation, compromise, discharge, or forgiveness of the student loan principal, and/or to materially modify repayment amounts or terms, but the Department's Office of the General Counsel, in consultation with the Department of Justice's Office of Legal Counsel, concluded she would lack statutory authority to do so. Our opinion has not changed. For the reasons discussed below, we believe the Secretary does not have the statutory authority to cancel, compromise, discharge, or forgive, on a blanket or mass basis, principal balances of student loans, and/or to materially modify the repayment amounts or terms thereof.

A. The Constitution provides "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. Const. art. I, § 9, cl. 7. This Clause is intended "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990). Appropriations "shall be applied only to the objects for which the appropriations were made except as otherwise provided by law" and must be expressly stated, not inferred or implied. 31 U.S.C. §§ 1301(a), 1301(d); *see also Andrus v. Sierra Club*, 442 U.S. 347, 361 (1979); *United States v.*

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-1100
www.ed.gov

EXHIBIT A

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

*MacCollom*, 426 U.S. 317, 321 (1976); U.S. Gov't Accountability Off., Principles of Fed. Appropriations Law, Chapter 1, at p. 1–6 (4th ed. 2016).  The Antideficiency Act, codified at 31 U.S.C. §§ 1341-1342, 1349-1351, 1511-1519 ("ADA"), is one of several means by which Congress enforces its Constitutional authority.  Also, the Federal Claims Collection Act, 31 U.S.C. § 3711, *et seq.*, obligates agencies to "try to collect a claim of the United States Government for money . . . arising out of the activities of, or referred to, the agency[.]" 31 U.S.C. § 3711(a)(1).  By controlling regulation, the Secretary is directed to "aggressively collect all debts" and delegated limited compromise and settlement authority. *See* 31 CFR 901.1(a); *see also* 31 U.S.C. § 3711(a)(2); 31 CFR 902.2, 902.3, 902.4.   Among other things, we must be mindful of the fact that the Executive Branch does not have the dispensing power on its own.  *Richmond*, 496 U.S. at 435 (White, J. and Blackmun, J., concurring) (citing *Kendall v. United States ex rel. Stokes*, 12 Pet. 524, 613, 9 L.Ed. 1181 (1838)); *Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296 (1945).

       B.      The nature and scope of the Secretary's HEA authority is determined by construing the relevant statutory text in accordance with its ordinary public meaning at the time of enactment, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020), in context and with consideration for the overall statutory scheme.  *Yates v. United States*, 574 U.S. 528, 537–38, 40–41 (2015) (Ginsberg, J.); *Davis v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989).  The statute must be construed "as a symmetrical and coherent regulatory scheme," and we are obligated to "fit, if possible, all parts into an harmonious whole[.]" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citations and quotation marks omitted).  Consequently, "every word and every provision is to be given effect. . . .None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."  Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *United States v. Alaska*, 521 U.S. 1 (1997); *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202 (1997); *Rake v. Wade*, 508 U.S. 464 (1993); *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion by Scalia, J.) (citing the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant").

Also, we are obligated to recognize and give effect to the principle Congress "does not . . . hide elephants in mouseholes."  *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006); *see also Whitman v. Am. Trucking Ass'ns, Inc.*, 531 US 457, 468 (2001); *Brown & Williamson*, 529 U.S. at 160.  That is, Congress does not impliedly delegate a policy decision of massive economic and political magnitude – as blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, or the material modification of the repayment terms or amounts thereof, surely would be – to an administrative agency. *See Whitman,* 531 U.S. at 468.

Finally, if an otherwise acceptable construction of a statute raises serious constitutional problems, and where an alternative interpretation of the statute is "fairly possible," *Crowell v. Benson*, 285 U.S. 22, 62 (1932), then the statute should be construed to avoid such problems.  *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341, 345–348 (1936) (Brandeis, J., concurring); *see U.S. ex rel. Att'y Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 408 (1909);  *see also Nielsen v. Preap,* 139 S. Ct. 954, 971 (2019).

C. All federal student loan programs administered by the Department are funded through annual Congressional appropriations drawn from the Treasury. These appropriations are conditioned on the Department's faithful execution of the laws authorizing that loans be made available to eligible borrowers and then repaid or collected. *See* 20 U.S.C. §§ 1077a, 1078, 1078-3, 1078-6, 1078-7, 1080, 1080a, 1082, 1083, 1085, 1087e, 1087-1, 1087gg, 1091b, 1092b, 1092c, 1095a, 1098e. Although Congress could enact legislation authorizing the Department to provide blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or to materially modify repayment amounts or terms, it has not done so. *See* 20 U.S.C. §§ 1077-10 – 1077-12, 1087e(f), 1087e(h), 1087ee, 1091b, 1098d. Rather, Congress has explicitly authorized cancellation, compromise, discharge, or forgiveness, and/or material modifications to repayment amounts or terms only in very limited circumstances. *See, e.g.*, 20 U.S.C. §§ 1087e(f), 1087e(h), 1094(b)(3), 1098aa, *et seq*.

At the same time, Congress has delegated to the Secretary of Education certain general powers regarding the Family Federal Education Loan program under Part B of Title IV ("FFEL"), including the ability to "enforce, pay, compromise, waive, or release any right, title, claim, lien, or demand, however acquired, including any equity or any right of redemption." 20 U.S.C. § 1082(a)(6). The Secretary's general powers in 20 U.S.C. § 1082(a)(6) also apply to the William D. Ford Federal Direct Loan Program under Part D of Title IV. 20 U.S.C. § 1087a(b)(2).

This raises an obvious interpretative question – whether the general grant of authority under 20 U.S.C. § 1082(a)(6) to "compromise, waive, or release any right, title, claim, lien, or demand" empowers the Secretary, on a blanket or mass basis, to cancel, compromise, discharge, or forgive student loan principal balances and/or to materially modify the repayment amounts or terms thereof, notwithstanding other, more specific Title IV provisions requiring repayment and providing for cancellation, compromise, discharge, forgiveness, or modification only in limited circumstances. We believe reading 20 U.S.C. § 1082(a)(6) to permit the Secretary, on a blanket or mass basis, to cancel, compromise, discharge, or forgive student loan principal balances, or to materially modify the repayment amounts or terms thereof, would "be hyperliteral and contrary to common sense." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Title IV's plain text and statutory scheme, and controlling interpretative canons, compel us to conclude Congress appropriated funds for student loans with the expectation that such loans would be repaid except in very specific circumstances.

"[I]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). That is particularly true where, as here, "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting); *see also HCSC–Laundry v. United States*, 450 U.S. 1, 6 (1981) (per curiam) (the specific governs the general "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]"). As Justice Scalia, writing for a unanimous Court, pointed out:

> The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an

> exception to the general one. *But the canon has full application as well to statutes such as the one here, in which a general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.*

*Gateway Hotel*, 566 U.S. at 645(citations and quotation marks omitted) (emphasis added).

Assuming *arguendo* that there is a policy case for student loan principal balance cancellation, compromise, discharge, or forgiveness by administrative decree,[1] the Office of the General Counsel does not believe the statutory scheme fairly allows 20 U.S.C. § 1082(a)(6) to be the basis for doing so. Rather, we believe 20 U.S.C. § 1082(a)(6) is best construed as a limited authorization for the Secretary to provide cancellation, compromise, discharge, or forgiveness only on a case-by-case basis[2] and then only under those circumstances specified by Congress.[3] Attempting to shoehorn broad authority into 20 U.S.C. § 1082(a)(6) would create a paradigmatic "elephant in a mousehole," swallow up and render surplusage many Title IV provisions, and needlessly create Spending Clause, Antideficiency Act, and dispensing power concerns. *Whitman*, 531 U.S. at 468; *see also Nielsen*, 139 S. Ct. at 969; *Gateway Hotel*, 566 U.S. at 645; *Yates*, 574 U.S. at 540–41; *Brown & Williamson*, 521 U.S. at 133; *Richmond*, 496 U.S. at 435; *Benson*, 285 U.S. at 62.

---

[1]We note evidence suggesting blanket or mass loan forgiveness, especially by administrative fiat, would be a significantly regressive policy with significant moral hazard. *See, e.g.*, Catherine & Yannelis, *The Distributional Effects of Student Loan Forgiveness: University of Chicago, Becker Friedman Institute for Economics Working Paper No. 2020-169* (Dec. 10, 2020).

[2]Consequently, we believe the "class action" provision of the 2016 borrower defense rule, 34 C.F.R. §§ 685.222(f)–(h), providing for blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances based on substantial misrepresentations, is problematic at best. Neither Title IV nor the Administrative Procedure Act specifically authorizes such a provision.

[3]The Department has recognized the far outer boundary of its authority as authorizing partial compromise or waiver of FFEL program loans held by the Department, and only to the extent of providing an interest credit for a defined time period, such as during the time when a borrower defense application regarding such loan(s) is pending or during the weeks between the declaration of the COVID-19 national emergency and the passage of the CARES Act. The Department has also interpreted this general power to apply in a similar way in the context of the Direct loan program and the Perkins loan program, based on statutory language extending "the same terms, conditions, and benefits" for those loans as are available for FFEL program loans. 20 U.S.C. § 1087e(a)(1) ("Unless otherwise specified in this part, loans made to borrowers under this part shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made to borrowers, and first disbursed on June 30, 2010, under sections 1078, 1078-2, 1078-3, and 1078-8 of this title."); 20 U.S.C. § 1087dd. Yet even this conclusion is debatable because the Secretary's general power to compromise or waive claims under the FFEL program is neither a term nor a condition nor a benefit of FFEL program loans.

D. Congress has delegated to the Secretary authority to provide specified waivers or modifications to Title IV federal financial student aid program statutory and regulatory requirements because of the declared National Emergency. *See Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak*, 85 Fed. Reg. 15,337 (March 18, 2020). The HEROES Act of 2003, codified at 20 U.S.C. § 1098aa, *et seq.*, provides:

> Notwithstanding any other provision of law, unless enacted with specific reference to this section, the Secretary of Education . . . may waive or modify any statutory or regulatory provision applicable to the student financial assistance programs under title IV of the Act [, 20 U.S.C. §1070, *et seq.*,] as the Secretary deems necessary in connection with a war or other military operation or national emergency to provide the waivers or modifications authorized by paragraph (2).

20 U.S.C. § 1098bb(a)(1). However, Congress narrowly cabined the scope of the Secretary's discretion. Specifically, 20 U.S.C. § 1098bb(a)(2) provides:

> (2) Actions authorized. The Secretary is authorized to waive or modify any provision described in paragraph (1) as may be necessary to ensure that—
>
> > (A) recipients of student financial assistance under title IV of the Act who are affected individuals are not placed in a worse position financially in relation to that financial assistance because of their status as affected individuals;
> >
> > (B) administrative requirements placed on affected individuals who are recipients of student financial assistance are minimized, to the extent possible without impairing the integrity of the student financial assistance programs, to ease the burden on such students and avoid inadvertent, technical violations or defaults;
> >
> > (C) the calculation of "annual adjusted family income" and "available income", as used in the determination of need for student financial assistance under title IV of the Act for any such affected individual (and the determination of such need for his or her spouse and dependents, if applicable), may be modified to mean the sums received in the first calendar year of the award year for which such determination is made, in order to reflect more accurately the financial condition of such affected individual and his or her family;
> >
> > (D) the calculation under section 484B(b)(2) of the Act (20 U.S.C. 1091b(b)(2)) of the amount a student is required to return in the case of an affected individual may be modified so that no overpayment will be required to be returned or repaid if the institution has documented (i) the student's status as an affected individual in the student's file, and (ii) the amount of any overpayment discharged; and

> (E) institutions of higher education, eligible lenders, guaranty agencies, and other entities participating in the student assistance programs under title IV of the Act that are located in areas that are declared disaster areas by any Federal, State or local official in connection with a national emergency, or whose operations are significantly affected by such a disaster, may be granted temporary relief from requirements that are rendered infeasible or unreasonable by a national emergency, including due diligence requirements and reporting deadlines.

20 U.S.C. § 1098bb(a)(2).

Plain HEA language and context strongly suggest Congress never intended the HEROES Act as authority for mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or to materially modify repayment amounts or terms for at least three reasons. First, the Secretary's delegated authority is limited (a) to the waiver or modification of statutory requirements to put individual borrowers who are "affected individuals," defined as a person who "resides or is employed in an area that is declared a disaster area by any Federal, State, or local official in connection with a national emergency; or suffered direct economic hardship as a direct result of a war or other military operation or national emergency, as determined by the Secretary", 20 U.S.C. § 1098ee(2), in the same position financially in relation to their Title IV loans as if the national emergency had not occurred; and (b) to minimize administrative requirements to "avoid inadvertent, technical violations or defaults," among other things. 20 U.S.C. § 1098bb(a)(2)(A), (B). Second, the reference to "defaults" in § 1098bb(a)(2)(B), and the cross-cite to § 1091b(b)(2) dealing with "return" of student loan funds, together provide a strong textual basis for concluding Congress intended loans to be repaid, even after the exercise of HEROES Act authority. Third, the term "modify" does not authorize the Department to make major changes to the repayment provisions of loans made pursuant to Title IV. To the contrary, "modify" means "to change moderately or in minor fashion." *MCI Telecomms. Corp. v. Am. Telephone & Telegraph Co.*, 512 U.S. 218, 225 (1994) ("modify" in federal statute "has a connotation of increment or limitation"). Modifying or waiving repayment amounts or materially altering loan terms would hardly be changing Title IV "moderately or in minor fashion."

The Department has used the HEROES Act to alter or extend certain HEA provisions in certain circumstances, including a National Emergency. However, the Department has never relied on the HEROES Act or any other statutory, regulatory, or interpretative authority for the blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or the material change of repayment amounts or terms, and rightly so, for the statutory text does not permit, authorize, or support such action. We believe it is impossible to escape the conclusion that Congress funds student loans with the expectation that such loans will be repaid in full with interest, except in identified circumstances, and did not authorize you to countermand or undermine that expectation.

E.  Given the HEA's many specific provisions for cancellation, compromise, discharge, or forgiveness of student loan principal balances and/or material modifications to the repayment amounts or terms thereof, we believe any Executive Branch action on a blanket or mass basis, whether under 20 U.S.C. § 1082(a)(6), the HEROES Act, or otherwise, wrongfully transforms carefully cabined HEA settlement authority into a general administrative dispensing power. *Zuber v. Allen*, 396 U.S. 168,

183 (1969). "The details with which the exemptions in [the HEA] have been made preclude their enlargement by implication." *Addison v. Holly Hill Fruit Products*, 322 U.S. 607, 618 (1944) (Frankfurter, J.). Congress of course is free to amend the HEA and grant the Secretary this authority at any time. But for now, Congress has made explicit statutory requirements for the cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or the material modification of the repayment amounts or terms thereof, and they must be observed. *Richmond*, 496 U.S. at 435; *Angelus Milling Co.*, 325 U.S. at 296 ("Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of [Executive] officials.").

F.  Our approach and our analysis are consistent with and supported by both controlling interpretative authorities and persuasive precedent concerning, *inter alia*, the Attorney General's authority to compromise claims by the United States. *See, e.g.*, [Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion](#), 23 Op. O.L.C. 126, 135, 137–154 (1999). For example, the Attorney General's power to settle litigation is defined, expressly or implicitly, by statute and must be exercised consistent with his obligation to execute and enforce U.S. laws. "The settlement power is sweeping, but the Attorney General must still exercise h[is] discretion in conformity with h[is] obligation to "enforce the Acts of Congress." *Id.* at 135 (citations omitted).[4]  Thus, "the considerations and terms that inform and structure a settlement must be traceable, nonetheless, *to a discernible source of statutory authority.*" *Id.* at 137 (emphasis added). Similarly, "considerations that concern more particular policy aims . . . generally must be rooted in the purposes of the statutes that govern the agency that has been vested by Congress with the policymaking discretion and on whose behalf the settlement would be effected. It is the governing statutes of the agency involved in the litigation, therefore, that in many instances must provide the authority for a settlement." *Id.; see also id.* at 139 ("The ultimate task is to arrive at a faithful determination of Congress's intent, taking into account both the purposes that underlie the Attorney General's statutorily conferred settlement power and the terms and purposes of the statutes that are relevant to the particular matter in litigation, including the statutes that limit the discretion of the agency on behalf of which the Attorney General would be entering into a settlement.").

The Executive Branch's constitutional obligation "to 'take Care that the Laws be faithfully executed' necessarily serves to limit the exercise of the Attorney General's settlement authority so that it does not become a dispensing power." *Id.* at 138 (citation omitted); *see also Angelus Milling Co.,* 325 U.S. at 296 ("Insofar as Congress has made explicit statutory requirements, they must be observed and are beyond the dispensing power of [Executive] officials." ); *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Consequently, "the Attorney General ordinarily may not settle litigation on terms that would transgress valid, otherwise applicable, statutory restrictions on agency conduct," and "the Attorney General generally may not settle litigation by committing the agency to consider the prohibited factors in future rule makings. A contrary conclusion would transform the settlement power into a general dispensing power with respect to those statutes that purported to govern agency conduct." 26 Op. O.L.C. at 163 (citations omitted).

---

[4]By contrast, the Secretary's HEA settlement discretion and authority are narrow and limited, not sweeping and broad. *Compare* Sections C and D *supra* (citing authorities) *with* 23 Op. O.L.C. at 135–36 (citing authorities).

G. Finally, even if the HEA could be fairly construed as granting the Secretary authority to provide blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or to materially modify the repayment amounts or terms thereof, we note the possibility Executive action doing so might be appropriately and necessarily considered a legislative rule under the Administrative Procedure Act, 5 U.S.C. § 551(4).  As such, all the requirements of notice and comment rulemaking under 5 U.S.C. § 553 might need to be met.  *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins., Co.*, 463 U.S. 29, 43 (1983) ("an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider.").

H. For these reasons, we believe the Secretary does not have statutory authority to provide blanket or mass cancellation, compromise, discharge, or forgiveness of student loan principal balances, and/or to materially modify the repayment amounts or terms thereof, whether due to the COVID-19 pandemic or for any other reason.

Please contact us if we may be of further assistance.

U.S. DEPARTMENT OF EDUCATION
THE OFFICE OF THE GENERAL COUNSEL

Reed Rubinstein
Digitally signed by Reed Rubinstein
Date: 2021.01.12 17:46:52 -05'00'

_____
Reed D. Rubinstein
Principal Deputy General Counsel delegated
 the authority and duties of the General Counsel