

MAJORITY MEMBERS:

VIRGINIA FOXX, NORTH CAROLINA,
*Chairwoman*

JOE WILSON, SOUTH CAROLINA
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
GLENN GROTHMAN, WISCONSIN
ELISE M. STEFANIK, NEW YORK
RICK W. ALLEN, GEORGIA
JIM BANKS, INDIANA
JAMES COMER, KENTUCKY
LLOYD SMUCKER, PENNSYLVANIA
BURGESS OWENS, UTAH
BOB GOOD, VIRGINIA
LISA C. MCCLAIN, MICHIGAN
MARY E. MILLER, ILLINOIS
MICHELLE STEEL, CALIFORNIA
RON ESTES, KANSAS
JULIA LETLOW, LOUISIANA
KEVIN KILEY, CALIFORNIA
AARON BEAN, FLORIDA
ERIC BURLISON, MISSOURI
NATHANIEL MORAN, TEXAS
LORI CHAVEZ-DEREMER, OREGON
BRANDON WILLIAMS, NEW YORK
ERIN HOUCHIN, INDIANA
MICHAEL RULLI, OHIO

MINORITY MEMBERS:

ROBERT C. "BOBBY" SCOTT, VIRGINIA,
*Ranking Member*

RAÚL M. GRIJALVA, ARIZONA
JOE COURTNEY, CONNECTICUT
GREGORIO KILILI CAMACHO SABLAN,
NORTHERN MARIANA ISLANDS
FREDERICA S. WILSON, FLORIDA
SUZANNE BONAMICI, OREGON
MARK TAKANO, CALIFORNIA
ALMA S. ADAMS, NORTH CAROLINA
MARK DESAULNIER, CALIFORNIA
DONALD NORCROSS, NEW JERSEY
PRAMILA JAYAPAL, WASHINGTON
SUSAN WILD, PENNSYLVANIA
LUCY MCBATH, GEORGIA
JAHANA HAYES, CONNECTICUT
ILHAN OMAR, MINNESOTA
HALEY M. STEVENS, MICHIGAN
TERESA LEGER FERNÁNDEZ,
NEW MEXICO
KATHY E. MANNING, NORTH CAROLINA
FRANK J. MRVAN, INDIANA
JAMAAL BOWMAN, NEW YORK

**COMMITTEE ON
EDUCATION AND THE WORKFORCE**

U.S. HOUSE OF REPRESENTATIVES
2176 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

August 14, 2024

The Honorable Miguel Cardona
Secretary
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202

Dear Secretary Cardona:

As the chairwoman of the House Committee on Education and the Workforce, I am deeply alarmed by what appears to be the Department of Education's (Department) willful and flagrant disregard for student loan borrowers, a recent Supreme Court decision,[1] the *Administrative Procedure Act* (APA), and taxpayers. In a July 31, 2024 press release, the Department announced that it would begin "emailing all borrowers with at least one federally held student loan" to alert them of their eligibility for student debt relief under a rule that is, by the Department's own admission, "*not yet finalized*"; borrowers will have until August 30 to "opt out" of this mystery relief.[2] Similar to prior illegal attempts by the Biden-Harris administration to have unelected bureaucrats decide "major questions" (e.g.*, Nebraska v. Biden*)[3] on student loan forgiveness—costing hundreds of billions of dollars—this attempt very well may meet a similar fate in the courts.

To my knowledge, no administration—Democrat or Republican—has ever taken such an aberrant approach to the administration of federal student aid as auto-enrolling the public in a government program that does not yet exist. The APA clearly sets forth how rules are to be made: a proposed rule stage, which may or may not be informed by an advanced notice of proposed rulemaking; a comment period during which the public provides its views and the agency thereafter considers the input for any modifications; and the promulgation of a final rule, which may not take effect until 30 days after such promulgation, unless there is "a substantive rule which grants or recognizes an exemption or relieves a restriction," an "interpretative rule[],"

---

[1] *Biden v. Nebraska*, 600 U.S. __, 143 S.Ct. 2355, 216 L.Ed.2d 1063 (2023).
[2] *See* https://www.ed.gov/news/press-releases/biden-harris-administration-takes-next-step-toward-additional-debt-relief-tens-millions-student-loan-borrowers-fall, (emphasis added).
[3] *Biden v. Nebraska*, 143 S.Ct. at 2374-2376.

EXHIBIT
I

a "statement[] of policy," or "good cause found and published with the rule."[4] This latest attempt at forgiveness would not be the first time the Biden-Harris Department has tried to skirt the law to push forward its progressive agenda. In June 2023, the Supreme Court struck down the Department's debt relief scheme because the Constitution reserves the deliberation of major policy matters to Americans' elected representatives in Congress, not unelected agency bureaucrats insulated from checks and balances.[5]

Disregarding the Supreme Court's admonition that student loan forgiveness is a matter for Congress to decide, the Department promptly initiated a negotiated rulemaking that culminated in the April 2024 publication of nine closely related (and still fundamentally flawed) proposed rules that walk the same plank with only a slightly different gait. These proposed rules are far beyond the authority granted to the Department by Congress, are unfair to both eligible and ineligible borrowers, and will further cripple our economy. Through this rule, the Department—now robbed of the cloak of *Chevron* deference[6]—seeks to use limited "compromise and settlement" statutory authority[7] to usher in the same kind of broad-based loan forgiveness programs that are "major questions" in the view of the Supreme Court.[8] The Department's SAVE repayment plan also was preliminarily enjoined in one federal judicial circuit,[9] citing skepticism of the Department's statutory authority to wipe out hundreds of billions in federal student loans,[10] and stayed in another.[11]

Regardless of the content of these nine rules, *they are not final rules*. To send out a press release telling borrowers they automatically are eligible for relief that doesn't yet exist is as arrogant as it is irresponsible.

In light of the Department's recent lack of fidelity to the law, I am deeply concerned that the Department will again seek to shortcut the APA if and when it releases the next iteration of these nine rules, the proposed "hardship" rule, and other rules sent to the Office of Information and Regulatory Affairs recently.[12] My concern was only intensified when a Department representative refused to answer basic questions about the opt-out and how implementation of the regulation will work. This occurred during a briefing of congressional staff via telephone on July 30 about the press release. This shortcut could take the form of either a claim of "a substantive rule which grants or recognizes an exemption or relieves a restriction," an "interpretative rule[]," a "statement[] of policy," or "good cause found" to waive the statutory 30-day waiting period for a rule to become effective,[13] and thus have immediate effect. Let me be clear: buying votes through an illegal debt forgiveness scheme will never constitute "good cause," or meet any of the other exceptions to the waiting period. Further, since these rules have

---

[4] 5 U.S.C. §§ 551-559 (APA generally); 5 U.S.C. § 553(d) (30-day "effective date" rule).
[5] *Biden v. Nebraska*, 600 U.S. __, 143 S.Ct. 2355, 216 L.Ed.2d 1063 (2023).
[6] *See Loper Bright Enterprises v. Raimondo*, 603 U.S.__, 144 S.Ct. 2244 (June 28, 2024), overruling *Chevron U.S.A. v. National Resources Defense Council*, 467 U.S. 867 (1984).
[7] 20 U.S.C. § 1082(a)(4) and (6).
[8] *Biden v. Nebraska*, 143 S.Ct. at 2374-2376.
[9] *State of Missouri, et al., v Biden*, No. 24-2332 & No. 24-2351 (8th Cir. Aug. 9, 2024).
[10] *Id.*
[11] *State of Alaska, et al., v. U.S. Dept. of Educ.*, No. 24-3089 (10th Cir. June 30, 2024).
[12] https://www.reginfo.gov/public/jsp/EO/eoDashboard.myjsp.
[13] 5 U.S.C. § 553(d).

been under deliberation for many months, no claim can be made that there is a sudden emergency.[14] At a minimum, the Department must allow the full 30-day period to elapse before any rule becomes effective.

In light of the above, I request that you respond to the following question by no later than 5:00 p.m. on August 21, 2024:

> Will the Department guarantee that any rule concerning student loan repayment or debt relief published in the *Federal Register* between now and the expiration of the president's current term of office will not take effect before the statutory 30-day period[15] has elapsed?

Time is of the essence. I would appreciate your response without delay.

When congressional staff asked the Department representative to guarantee this during the July 30 briefing, the Department obfuscated and declined to answer. The apex of arrogance would be to publish a regulation with immediate effect and wipe tens of billions of dollars in loans off the books overnight, only to have a court likely halt the rule and reverse the accounting. Borrowers deserve to be spared the mass confusion that would ensue if the Department stooped to this level of disregard for the rule of law (i.e., APA).

Please note that I intend to inquire of and request documents from the loan servicers concerning the Department's latest attempt at an end-run around the Supreme Court.

Thank you for your prompt attention to this matter.

Sincerely,

*Virginia Foxx*

Virginia Foxx
Chairwoman
U.S. House Committee on Education and the Workforce

---

[14] Under certain circumstances, an emergency may constitute "good cause." *See*, for example *Jifry v. F.A.A.*, 370 F.3d 1174, 1179-80 (D.C.Cir. 2004) and *Hawaii Helicopters Operators Ass'n v. F.A.A.*, 51 F.3d 212, 214 (9th Cir. 1995).
[15] 5 U.S.C. § 553(d).