UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

STATE OF MISSOURI, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,

    *Defendants*.

Case No. 2:24-cv-00103-JRH-CLR

# DEFENDANTS' MOTION TO DISMISS FOR LACK OF VENUE

JILL E. STEINBERG
United States Attorney
Southern District of Georgia

SHANNON H. STATKUS
Assistant United States Attorney
South Carolina Bar No. 70410
United States Attorney's Office
Post Office Box No. 2017
Augusta, Georgia 30903
Tel.: (706) 724-0517

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

STEPHEN M. PEZZI
 D.C. Bar No. 995500
 Senior Trial Counsel
SIMON GREGORY JEROME
 D.C. Bar. No. 1779245
 Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.:  (202) 305-8576
Email:  stephen.pezzi@usdoj.gov

*Counsel for Defendants*

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

I.  BECAUSE GEORGIA LACKS ARTICLE III STANDING, PLAINTIFFS CANNOT ESTABLISH VENUE BASED SOLELY ON GEORGIA'S RESIDENCE. ..........................3

   A.  Georgia lacks Article III standing. ..............................................................................3

   B.  Georgia's lack of Article III standing means that venue is improper in this District. ..........8

II. EVEN IF GEORGIA HAD STANDING, VENUE IS STILL IMPROPER BECAUSE GEORGIA DOES NOT RESIDE IN THIS DISTRICT. ...........................................................9

III. DISMISSAL WITHOUT PREJUDICE IS THE APPROPRIATE REMEDY. ...................11

CONCLUSION .............................................................................................................................13


## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

I.  BECAUSE GEORGIA LACKS ARTICLE III STANDING, PLAINTIFFS CANNOT ESTABLISH VENUE BASED SOLELY ON GEORGIA'S RESIDENCE. ..........................3

   A.  Georgia lacks Article III standing. ..............................................................................3

   B.  Georgia's lack of Article III standing means that venue is improper in this District. ..........8

II. EVEN IF GEORGIA HAD STANDING, VENUE IS STILL IMPROPER BECAUSE GEORGIA DOES NOT RESIDE IN THIS DISTRICT. ...........................................................9

III. DISMISSAL WITHOUT PREJUDICE IS THE APPROPRIATE REMEDY. ...................11

CONCLUSION .............................................................................................................................13

# **TABLE OF AUTHORITIES**

**CASES**

*A.J. Taft Coal Co. v. Barnhart*,
  291 F. Supp. 2d 1290 (N.D. Ala. 2003) ................................................................................. 9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................................................................. 8

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023) ..................................................................................................... 2, 3

*Birnbaum v. Blum*,
  546 F. Supp. 1363 (S.D.N.Y. 1982) .................................................................................. 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................................... 6

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
  587 U.S. 262 (2019) ............................................................................................................. 11

*Dayton Area Chamber of Com. v. Becerra*,
  No. 3:23-cv-156, 2024 WL 3741510 (S.D. Ohio Aug. 8, 2024) ...................................... 8

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ............................................................................................................... 6

*FEC v. Cruz*,
  596 U.S. 289 (2022) .......................................................................................................... 4, 7

*Florida v. Mellon*,
  273 U.S. 12 (1927) ......................................................................................................... 5, 6, 7

*Garrison v. Dep't of Educ.*,
  636 F. Supp. 3d 935 (S.D. Ind. 2022) ................................................................................. 5

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ............................................................................................................... 6

*Inst. of Certified Pracs., Inc. v. Bentsen*,
  874 F. Supp. 1370 (N.D. Ga. 1994) .................................................................................... 9

*Kansas v. Biden*,
  No. 24-1057-DDC-ADM, 2024 WL 2880404 (D. Kan. June 7, 2024),
  *appeal filed*, No. 24-3093 (10th Cir. Jul. 9, 2024) ...................................................... 5, 6, 7

*Kansas v. Garland*,
  No. 2:24CV00088 JM, 2024 WL 2384611 (E.D. Ark. May 23, 2024) ...................................... 8

*Leonhart v. McCormick*,
  395 F. Supp. 1073 (W.D. Pa. 1975) ........................................................................................ 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................................. 6

*Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*,
  1:22-cv-712, 2023 WL 455079 (W.D. Mich. Jan. 10, 2024) .................................................... 9

*Miller v. Albright*,
  523 U.S. 420 (1998) .................................................................................................................. 8

*Missouri v. Biden*,
  No. 4:24-cv-00520, 2024 WL 3104514 (E.D. Mo. June 24, 2024) ........................................ 10

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) .............................................................................................................. 7

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
  No. 1:23-cv-707, 2024 WL 561860 (W.D. Tex. Feb. 12, 2024),
  *appeal filed* No. 24-50180 (5th Cir. Mar. 14, 2024) ................................................................ 8

*Nestor v. Hershey*,
  425 F.2d 504 (D.C. Cir. 1969) ................................................................................................ 10

*O'Neill v. Battisti*,
  472 F.2d 789 (6th Cir. 1972) ................................................................................................... 10

*Pennsylvania v. Kleppe*,
  533 F.2d 668 (D.C. Cir. 1976) .................................................................................................. 6

*Pennsylvania v. New Jersey*,
  426 U.S. 660 (1976) ............................................................................................................. 4, 5

*Perkins v. Snider*,
  No. Civ. A. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ........................................... 10

*Peterson v. Adams*,
  No. 1:13-cv-116-JRH-BKE, 2013 WL 6092724 (S.D. Ga. Nov. 19, 2013) ............................. 8

*Pinson v. Rumsfeld*,
  192 F. App'x 811 (11th Cir. 2006) .......................................................................................... 11

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) ................................................................................................................ 11

*Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*,
   689 F.2d 982 (11th Cir. 1982) ......................................................................................... 11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ......................................................................................................... 12

*United States v. Richardson*,
   418 U.S. 166 (1974) ........................................................................................................... 6

*United States v. Texas*,
   599 U.S. 670 (2023) ........................................................................................................... 6

*Wyoming v. Oklahoma*,
   502 U.S. 437 (1992) ........................................................................................................... 7


**STATUTES**

26 U.S.C. § 61(a)(11) ................................................................................................................. 4

26 U.S.C. § 108(f)(5) .................................................................................................................. 4

28 U.S.C. § 1391(c) .................................................................................................................. 10

28 U.S.C. § 1391(c)(1) .............................................................................................................. 10

28 U.S.C. § 1391(c)(2) ........................................................................................................ *passim*

28 U.S.C. § 1391(c)(3) .............................................................................................................. 10

28 U.S.C. § 1391(d) .................................................................................................................. 10

28 U.S.C. § 1391(e) ............................................................................................................... 3, 8

28 U.S.C. § 1391(e)(1) ................................................................................................................ 8

28 U.S.C. § 1391(e)(1)(A) .......................................................................................................... 8

28 U.S.C. § 1391(e)(1)(B) .......................................................................................................... 8

28 U.S.C. § 1391(e)(1)(C) ...................................................................................................... 3, 8

28 U.S.C. § 1406 ...................................................................................................................... 11

28 U.S.C. § 1406(a) ............................................................................................................ 11, 12

O.C.G.A. § 48-7-27(a) ..................................................................................................................4

O.C.G.A. § 48-7-27(a)(9) .............................................................................................................5

O.C.G.A. § 48-7-27(a)(11.2) ........................................................................................................5

O.C.G.A. § 48-7-27(a)(12.2) ........................................................................................................5

**RULES**

Fed. R. Civ. P. 41(b) ..................................................................................................................12

Fed. R. Civ. P. 12(b)(1) ......................................................................................................3, 7, 13

Fed. R. Civ. P. 12(b)(3) ......................................................................................................3, 8, 13

Fed. R. Civ. P. 12(h)(3) ................................................................................................................3

Local Rule 7.2 ..............................................................................................................................3

**OTHER AUTHORITIES**

14D Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3805 (4th ed. 2023 update) ...............................................11

14D Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3815 (4th ed. 2024) .............................................................9

14D Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3826 (4th ed. 2024) .............................................................8

14D Charles Alan Wright & Arthur R. Miller,
  Federal Practice & Procedure § 3827 ...................................................................................12

15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ...............................................10

17 Moore's Federal Practice - Civil § 110.03 (2023) .................................................................10

Tax Foundation, *State Individual Income Tax Rates, 2024* (Feb. 20, 2024),
  https://perma.cc/CU4A-5LT2 ................................................................................................5

# **INTRODUCTION**

Plaintiffs' filings in this case—and the Court's recently entered temporary restraining order—have been largely focused on the State of Missouri's allegations of injury relating to MOHELA, an instrumentality of Missouri that services federal student loans.

But this isn't Missouri. So what connects this litigation to the Southern District of Georgia? Even on Plaintiffs' telling, the thinnest of reeds. One of the seven Plaintiffs is the State of Georgia. And, according to Plaintiffs, although Georgia's state capital is located in the Northern District of Georgia, "a State resides everywhere within its borders," Compl. ¶ 31, ECF No. 1, so it can choose freely among any federal court, located anywhere in Georgia—or, for that matter, anywhere in *any* of the Plaintiff States. And it can do so every time it sues the United States.

Plaintiffs are mistaken—for two separate and independent reasons. First, Plaintiff Georgia lacks Article III standing. Georgia does not allege that it has any state instrumentality that is similarly situated to MOHELA. Instead, Georgia pursues only one theory: that it is injured by a loss of state income-tax revenues caused by Georgia's own state income-tax laws. Every court to consider that theory of standing has rejected it, and this Court should do the same. And it is well settled that a plaintiff without Article III standing cannot be the sole basis for venue in federal court—so Georgia's lack of Article III standing necessarily results in all Plaintiffs' lack of venue.

Second, even if Plaintiff Georgia could show Article III standing, the plain text of the federal venue statute confirms that it resides, "[f]or all venue purposes," "*only* in *the* judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2) (emphases added). That is Atlanta, the State's capital, which is located in the Northern District of Georgia. Accordingly, even if Georgia had a viable standing theory, this case was still filed in an improper venue.

The upshot is that, regardless of the allegations of the other Plaintiff States, this case cannot continue in this forum unless the Court holds both that (1) Plaintiff Georgia has Article III standing, and (2) that Plaintiff Georgia resides in the Southern District of Georgia. Because neither of those conclusions would be sound, this case should be dismissed, without prejudice, for improper venue.

**BACKGROUND**

Plaintiffs—the States of Missouri, Georgia, Alabama, Arkansas, Florida, North Dakota, and Ohio—filed this lawsuit on September 3, 2024. Plaintiffs named as Defendants the United States Department of Education, Miguel A. Cardona (in his official capacity as Secretary of Education), and President Joseph R. Biden, Jr. (in his official capacity as President of the United States). Plaintiffs purported to challenge what they referred to in their filings as "the Third Mass Cancellation Rule" related to student debt relief, but which in fact did not then (and still does not now) exist—instead, Defendants have merely issued a notice of *proposed* rulemaking on the subject of student debt relief. As of the date of this filing, Defendants have not yet finalized any rule.

Plaintiffs also filed a motion for a temporary restraining order, a stay, and a preliminary injunction. ECF No. 5. On September 5, 2024, the Court entered a temporary restraining order, and simultaneously ordered Defendants to file a response to Plaintiffs' motion by today. TRO Order, ECF No. 17. The Court concluded that Missouri has standing under the Supreme Court's decision in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023), solely based on Missouri's allegations about "MOHELA," which is "a Missouri public instrumentality that is paid to service federal student loans," TRO Order at 3-4. The Court did not address whether any of the other Plaintiff States have adequately alleged Article III standing. *See* TRO Order at 3.

The Court determined that "Plaintiffs have shown they are entitled to a TRO," but also made clear that its decision was "based on the record as it currently exists," which did not include a response from Defendants, and that "the determinations made by the Court are not final and may change after additional facts are presented, the issues of law are further developed, and the Court has an opportunity to conduct a more thorough analysis of the legal issues presented." *Id.* at 5. Defendants are separately filing their response to Plaintiff's TRO motion concurrently with this brief.

Defendants now move to dismiss Plaintiff Georgia for lack of Article III standing, and, because the presence of Plaintiff Georgia is the only possible basis for venue in this Court, to dismiss the entire case for lack of venue.

2

Because this motion raises threshold issues that should be decided before the Court issues a further decision on Plaintiff's motion for injunctive relief, Defendants respectfully request that it be heard at the upcoming TRO hearing in this matter.[1] Defendants' counsel will confer with Plaintiffs' counsel about an appropriate schedule for further briefing on this motion.

## ARGUMENT

Plaintiffs' complaint offers only one theory of venue: that Plaintiff Georgia "resides" in this District. *See* Compl. ¶ 31 (citing 28 U.S.C. § 1391(e)).[2] That theory fails, for either or both of two separate and independent reasons: (1) Georgia lacks Article III standing, meaning that it cannot serve as the sole basis for venue; and (2) regardless, Georgia in fact "resides" "only" in the Northern District of Georgia within the meaning of 28 U.S.C. § 1391(c)(2) and (e)(1)(C), the statutory venue provisions that govern suits against the United States. Accordingly, Georgia should be dismissed, for lack of Article III standing, under Federal Rule of Civil Procedure 12(b)(1),[3] and this case should be dismissed without prejudice, for lack of venue, under Federal Rule of Civil Procedure 12(b)(3).

### I. BECAUSE GEORGIA LACKS ARTICLE III STANDING, PLAINTIFFS CANNOT ESTABLISH VENUE BASED SOLELY ON GEORGIA'S RESIDENCE.

#### A. Georgia lacks Article III standing.

This Court's TRO order concluded—at least at this early stage, based solely on Plaintiffs' motion—that Plaintiff Missouri had shown Article III standing under the Supreme Court's decision in *Biden v. Nebraska*, 143 S. Ct. 2355 (2023). Even accepting that conclusion, however, it is no help to

---

[1] Per Local Rule 7.2, Defendants estimate that oral argument on this motion need not exceed 30 minutes per side, but defer to the Court's preferences.

[2] The complaint also alleges in conclusory fashion that "[v]enue is also appropriate because every State in the Eleventh Circuit is a plaintiff in this action," Compl. ¶ 32, but Plaintiffs offer no explanation (let alone a citation) for that proposition. Defendants are not aware of any venue statute, rule, or doctrine applicable in federal district court to which that allegation would be relevant, so Defendants will not address it further in this brief.

[3] To the extent necessary, Defendants also move to dismiss all other Plaintiffs (and the entire case) for lack of subject-matter jurisdiction under Rules 12(b)(1) and 12(h)(3), for the reasons stated in the response brief being filed concurrently with this motion. This motion, however, will be addressed solely to the standing and venue defects related to Plaintiff Georgia—which is all the Court needs to consider to dismiss this case in its entirety. *See infra* at 12 n.5.

3

Plaintiff Georgia—which does not allege that it has any state instrumentality that is similarly situated to Missouri's MOHELA. This Court has thus not yet issued any decision that is relevant to the question of whether Georgia has adequately alleged Article III standing.

Georgia has not. Unlike Missouri, Plaintiff Georgia relies on only one theory of Article III standing: that faster-than-expected forgiveness of student debt will diminish its state income tax revenues. In particular, Georgia contends that some student loans that might have been discharged far in the future will instead be discharged more quickly, as a result of the agency actions challenged here. That hypothesized shift in timing matters, Georgia says, because the Internal Revenue Code normally treats "discharge of indebtedness" as a form of "gross income," 26 U.S.C. § 61(a)(11), but a temporary provision excludes discharges of student loans from 2021 to 2025, *see* 26 U.S.C. § 108(f)(5). *See* Compl. ¶ 120-22. Georgia argues that, because it has chosen to incorporate the Internal Revenue Code's definition of "gross income" as the "baseline" for its own state tax code, a change in the timing of discharges will diminish its state tax revenues. *Id.* ¶ 120 (citing O.C.G.A. § 48-7-27(a)). That roundabout standing theory is incorrect for multiple reasons, and every court to consider this theory of standing in challenges to other forms student-loan relief has rejected it. This Court should too.

First, Georgia's alleged harm results from its own choice to tie its own state income-tax laws to the Internal Revenue Code. The Supreme Court's decision in *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (per curiam), squarely forecloses a State's effort to claim standing on such a self-generated basis. There, Pennsylvania sought to show standing to challenge a New Jersey tax by arguing that, because Pennsylvania provided a credit for taxes paid to other States, a tax increase in New Jersey could lead to a loss of tax revenue in Pennsylvania. *Id.* at 664-65. The Supreme Court rejected that theory, explaining that nothing required Pennsylvania to provide the credit, that any harm to Pennsylvania was thus "self-inflicted," and that "[n]o State can be heard to complain about damage inflicted by its own hand." *Id.* at 664; *see also FEC v. Cruz*, 596 U.S. 289, 297 (2022) (summarizing *Pennsylvania*).

Any reduction in Georgia's tax revenues here is self-inflicted in the same way. States need not use the same definition of gross income as the federal government does, and in fact they routinely exercise their independence in this area by defining income in a variety of different ways. Plaintiff

4

Florida, for example, chooses not to tax personal income at all. *See* Tax Foundation, *State Individual Income Tax Rates, 2024* (Feb. 20, 2024), https://perma.cc/CU4A-5LT2. Georgia is likewise free to depart from the Internal Revenue Code's approach and to treat student-loan discharges from 2021 to 2025 as taxable state income. In fact, Georgia *already* departs from the federal definition of income in many other respects. *See, e.g.*, O.C.G.A. § 48-7-27(a)(11.2) ("agricultural losses due to Hurricane Michael"); *id.* § 48-7-27(a)(9) ("the amount of contributions to the Teachers Retirement System of Georgia made by a taxpayer between July 1, 1987, and December 31, 1989"); *id.* § 48-7-27(a)(12.2) (certain "payments received by a firefighter").

If Georgia chooses not to do so here, any resulting reduction in its tax revenues is fairly traceable not to the Department of Education, but instead, as in *Pennsylvania*, to "decisions by [its] respective state legislature[]" about how to structure its own tax code. 426 U.S. at 664. Every court to consider this question in the context of litigation about discharges for student loans has reached that same conclusion. *See, e.g.*, *Kansas v. Biden*, 2024 WL 2880404, at *17 (D. Kan. June 7, 2024) (holding that "[t]he SAVE Plan didn't cause plaintiffs' injuries—plaintiffs' own tax policy caused them," and that "in general, reduced state tax revenue doesn't qualify as an injury in fact sufficient to confer standing on a state"), *appeal filed*, No. 24-3093 (10th Cir. Jul. 9, 2024); *Garrison v. Dep't of Educ.*, 636 F. Supp. 3d 935, 937 (S.D. Ind. 2022) (no standing to challenge debt relief based on "an increased state tax burden" because "the Federal Government's student loan relief program did not injure" plaintiffs, rather, "[t]he State's legislative decision did").

Second, even apart from the self-inflicted nature of the States' asserted harm, the Supreme Court's decision in *Florida v. Mellon*, 273 U.S. 12 (1927), establishes that a federal policy's incidental effects on state tax revenues are not judicially cognizable injuries. There, Florida sought to establish standing to challenge a federal inheritance tax by arguing that the tax would prompt the "withdrawal of property" from the State, diminishing its tax base. *Id.* at 18. The Supreme Court rejected that argument, explaining that Florida was required to show a "direct injury" and that any harm caused by the federal tax was, "at most, only remote and indirect." *Id.* That analysis equally applies here: Just as Florida could not establish standing by claiming that state tax revenues would decline because of a

5

federal policy, the States here cannot do so either. *See Kansas*, 2024 WL 2880404, at *16-17 (citing *Florida*, 273 U.S. at 12-18).

Georgia's contrary view has dramatic implications. Virtually all federal actions—from prosecuting crime to imposing taxes to managing property—have some incidental effects on state finances. If such incidental effects suffice for standing, every State would have standing to challenge almost any federal policy. That would flout Article III's case-or-controversy requirement and convert the federal courts into "an open forum for the resolution of political or ideological disputes." *United States v. Richardson*, 418 U.S. 166, 192 (1974) (Powell, J., concurring); *see Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976) ("[T]he unavoidable economic repercussions of virtually all federal policies . . . suggest to us that impairment of state tax revenues should not, in general, be recognized as sufficient injury in fact to support state standing."). The Supreme Court has repeatedly acknowledged those very concerns in rebuffing broad theories of Article III standing, including in other recent litigation between States and the United States. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023) (emphasizing that "federal courts must remain mindful of bedrock Article III constraints in cases brought by States against an executive agency or officer," including because "federal policies frequently generate indirect effects on state revenues or state spending").[4]

Third, Georgia's theory of reduced tax revenues is "too attenuated" and "too speculative." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024). "Standing is not 'an ingenious academic exercise in the conceivable'"; rather, a plaintiff must show that its asserted injury is "certainly impending." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2, 566 (1992) (citations omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, the hypothesized loss of tax revenues starting in 2026 is neither certain nor impending. Instead, it depends on the assumption that if borrowers did not receive debt relief now, they would later for other reasons; that those discharges would not occur

---

[4] To that end, Plaintiffs' complaint (but not their TRO motion) contains many unexplained references to their "sovereign" and "quasi-sovereign" interests. Compl. ¶¶ 11-23. To the extent that Plaintiffs mean to half-heartedly invoke some sort of *parens patriae* theory, it is settled that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." *Haaland v. Brackeen*, 599 U.S. 255, 295 (2023) (citation omitted).

6

until 2026 or later; and that neither state nor federal law would change in the meantime. *See* Compl. ¶¶ 120-22. Georgia's theory thus depends on a "speculative chain of possibilities," which does not suffice to establish standing. *Murthy v. Missouri*, 144 S. Ct. 1972, 1993 (2024).

Nor can Georgia rely on *Wyoming v. Oklahoma*, 502 U.S. 437 (1992). There, Oklahoma adopted discriminatory regulations with the avowed purpose of reducing purchases of coal from Wyoming. *Id.* at 443. The Supreme Court held that Wyoming had standing to challenge the Oklahoma laws under the Commerce Clause because it had suffered "a direct injury in the form of a loss of specific [coal] tax revenues." *Id.* at 448. But here, Georgia does not claim that the Department targeted or discriminated against it. *Cf. Kansas*, 2024 WL 2880404, at *17 ("The SAVE Plan doesn't target plaintiffs or their tax policies."). It alleges, at most, that debt relief will have incidental effects on its general tax revenues, which is not a cognizable Article III injury. *See Florida*, 273 U.S. at 18.

Finally, Georgia cannot avoid this result by recasting its theory of self-inflicted harm as a "sovereign injury" arising from some imagined pressure to "change state tax law" to avoid the revenue losses it fears. Compl. ¶ 122. Georgia retains its "sovereign" interests in full—nothing in any of the challenged agency actions (nor any provision of federal law) requires any State to include or exclude loan forgiveness from its state-law definition of taxable income, nor otherwise constrains state tax law in any relevant sense. In other words, the question is not whether Georgia must "change state tax law" to avoid an injury—Georgia simply cannot claim any Article III injury from its own "state tax law" in the first place. *Id.*; *see Cruz*, 596 U.S. at 297 (observing that a State's "unilateral decisions" regarding its tax policies are "not a basis to attack the legality" of actions that did not compel those tax policies).

In sum, whatever the merit of the other standing theories in this case advanced by other Plaintiff States, Georgia plainly lacks Article III standing. Accordingly, Georgia should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**B.    Georgia's lack of Article III standing means that venue is improper in this District.**

Once Georgia is dismissed, the rest follows as a matter of course. Rule 12(b)(3) calls for dismissal of an action if venue is "improper." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). And where, as here, the case is brought against "an agency of the United States," venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). "When the defendant challenges venue, the plaintiff bears the burden of showing that venue in the forum is proper." *Peterson v. Adams*, No. 1:13-cv-116-JRH-BKE, 2013 WL 6092724, at *2 (S.D. Ga. Nov. 19, 2013); *accord* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3826 (4th ed. 2024).

Plaintiffs' only theory of venue depends entirely on Georgia's residence. *See* Compl. ¶ 31. Accordingly, because the Court lacks subject-matter jurisdiction over Georgia, there is no basis for venue in this district: no defendant resides here, *see* 28 U.S.C. § 1391(e)(1)(A); none of the "events or omissions giving rise to the claim occurred" here, *id.* § 1391(e)(1)(B); and no (proper) plaintiff resides here, *see id.* § 1391(e)(1)(C).

A plaintiff who lacks standing cannot create venue where it would not otherwise exist. *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998) (op. of Stevens, J.) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."); *Dayton Area Chamber of Com. v. Becerra*, No. 3:23-cv-156, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024) ("Because the Court has determined that the Dayton Area Chamber must be dismissed due to lack of standing, venue is no longer proper in the Western Division of the Southern District of Ohio."); *Kansas v. Garland*, 2024 WL 2384611, at *3 (E.D. Ark. May 23, 2024) ("Having found that the State of Arkansas does not have standing to proceed in this action, venue is improper in this Court."); *Nat'l Infusion Ctr. Ass'n v. Becerra*, No. 1:23-cv-707, —

8

F. Supp. 3d. —, 2024 WL 561860, at *5 (W.D. Tex. Feb. 12, 2024) ("[T]he Court dismisses Plaintiff NICA for lack of subject matter jurisdiction under Fed. Rule of Civ. P. 12(b)(1) and dismisses the case for lack of venue under Fed. Rule of Civ. P. 12(b)(3)."), *appeal filed* No. 24-50180 (5th Cir. Mar. 14, 2024); *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, No. 1:22-cv-712, — F. Supp. 3d —, 2023 WL 455079, at *5 (W.D. Mich. Jan. 10, 2024) (after concluding that the venue-creating plaintiff "lacks standing," holding that "the Western District of Michigan is no longer" an appropriate venue); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3815 (4th ed. 2024) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district.").

If that were not the rule, then Plaintiffs could have enlisted any citizen of Augusta with policy objections to student debt relief to serve as a nominal plaintiff, solely to create venue in this District—a result that would encourage forum shopping and undermine both the federal venue statute and Article III of the Constitution. Accordingly, upon Georgia's dismissal, the entire case should be dismissed for lack of venue.

## II. EVEN IF GEORGIA HAD STANDING, VENUE IS STILL IMPROPER BECAUSE GEORGIA DOES NOT RESIDE IN THIS DISTRICT.

Even if Georgia had Article III standing, venue is still improper in this District for a separate and independent reason. Plaintiffs' only venue theory is that "Plaintiff Georgia is a resident of this judicial district because a State resides everywhere within its borders." Compl. ¶ 31. But that conclusory allegation ignores the text of the federal venue statute, which provides that "[f]or all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2).

The State of Georgia maintains its principal place of business where it performs its official duties—that is, in its capital, Atlanta, located in the Northern District. *See, e.g.*, *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties. State officials with 'statewide jurisdiction' may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. Civ. A. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government."); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2023) (same).

Plaintiffs allege that a State resides for venue purposes in any location within its borders. Although several courts have adopted this view, *see, e.g.*, *Missouri v. Biden*, No. 4:24-cv-00520, 2024 WL 3104514, at *20 (E.D. Mo. June 24, 2024), none of them bind this Court. And that conclusion is, respectfully, irreconcilable with the text and structure of the federal venue statute, in ways that other courts have often overlooked.

Congress defined "residency . . . [f]or all venue purposes," 28 U.S.C. § 1391(c), only for the following litigants:

- "[N]atural person[s]," 28 U.S.C. § 1391(c)(1);
- "[E]ntit[ies] with the capacity to sue and be sued in [their] common name under applicable law, whether or not incorporated," *id.* § 1391(c)(2);
- Defendants "not resident in the United States," *id.* § 1391(c)(3); and
- "[C]orporations in States with multiple districts," *id.* § 1391(d).

10

Congress could have created a fifth category for States. It did not. Accordingly, because State sovereigns are not specifically enumerated—and being neither natural persons, non-residents of the United States, nor corporations—they fall into the residual category under § 1391(c)(2) for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated." *See id.* § 1391(c)(2); *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]"). Such an entity, "if a plaintiff," resides "only in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2).

Here, that district is the Northern District of Georgia, which includes Atlanta. And because an entity plaintiff can reside in only one district at a time—the statute explicitly provides that it resides "*only* in *the* judicial district in which it maintains its principal place of business"—Georgia cannot assert dual residency outside the Northern District. *See id.* § 1391(c)(2) (emphases added); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3805 (4th ed. 2023 update) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time."); *cf. Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262, 272 (2019) (Congress's "use of the definite article 'the' suggests that Congress did not intend for any and all private relators to be" covered by the certain provisions of the False Claims Act). The result is that, even if Georgia did have Article III standing, venue would still be improper in this District—in which no Plaintiff resides.

### III.   DISMISSAL WITHOUT PREJUDICE IS THE APPROPRIATE REMEDY.

Separate from Rule 12(b)(3), 28 U.S.C. § 1406 provides that, in the case of improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As between those options, "[t]he decision whether to" dismiss or "transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) (quoting *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982)). But here, "the interest[s] of justice" favor dismissal, rather than transfer—even

11

assuming that there is some other district in which this suit "could have been brought." 28 U.S.C. § 1406(a).[5]

Plaintiffs are sophisticated litigants, who surely selected this venue intentionally, with full awareness of the downside risk: that their only claim to venue would turn on whether Georgia was an appropriate plaintiff, and whether it resides in this District. *See* Compl ¶ 31 (citing recent venue litigation involving similar issues and several of the same parties and attorneys). There is no reason for this Court to rescue these Plaintiffs from the consequences of their own strategic litigation decisions. *See* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3827 (4th ed.) ("[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged.").

In addition, dismissal will cause minimal (if any) prejudice: if they can overcome their jurisdictional problems, Plaintiffs (or some subset of them) can refile in another district where there is no venue problem. *See* Fed. R. Civ. P. 41(b) (venue dismissal is not "an adjudication on the merits" and thus would not have any preclusive effect). That no prejudice would result from dismissal, instead of transfer, is a conclusion strengthened by the (inappropriately) early juncture at which Plaintiffs brought their case. As detailed in Defendants' concurrently filed opposition to Plaintiffs' motion for injunctive relief, the Department has not taken any final agency action. If, after dismissal, Plaintiffs continue to believe their interests are put at risk by some future agency action, they can refile to challenge that action if and when it actually happens.

---

[5] As explained in detail in Defendants' opposition to Plaintiffs' motion for a TRO, in fact, this Court (and any federal court) lacks subject-matter jurisdiction because *all* Plaintiffs lack Article III standing, and because Plaintiffs do not challenge any final agency action—but this Court need not decide those issues if it grants this motion. *See supra* at 3 n.3. As to all Plaintiffs other than Georgia, the Court can (and should) dismiss on venue grounds without deciding any other issue (including jurisdictional issues), because "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

**CONCLUSION**

For these reasons, the Court should dismiss Plaintiff Georgia for lack of subject-matter jurisdiction under Rule 12(b)(1), and dismiss this case, without prejudice, for lack of venue under Federal Rule of Civil Procedure 12(b)(3).

Dated: September 10, 2024

JILL E. STEINBERG
United States Attorney
Southern District of Georgia


*/s/ Shannon H. Statkus*
SHANNON H. STATKUS
Assistant United States Attorney
South Carolina Bar No. 70410
United States Attorney's Office
Post Office Box No. 2017
Augusta, Georgia 30903
Tel.: (706) 724-0517

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Stephen M. Pezzi*
STEPHEN M. PEZZI
D.C. Bar No. 995500
Senior Trial Counsel
SIMON GREGORY JEROME
D.C. Bar. No. 1779245
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*